

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
06/24/2009

| | | |
|---|---|---|
| IN RE: | § | |
| ANITA C RAMIREZ, | § | Case No. 09-70051 |
|     Debtor(s). | § | |
| | § | Chapter 7 |
| | § | |
| ANITA RAMIREZ, | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 09-07004 |
| | § | |
| JOSE ALBERTO RODRIGUEZ, | § | |
|     Defendant(s). | § | Judge Isgur |

<u>**MEMORANDUM OPINION DENYING
THE JOINT MOTION TO REMAND**</u>

For the reasons set forth below, the Court denies the Joint Motion to Remand or, Alternatively, Joint Motion to Abstain from Hearing Plaintiffs' Original Petition and Remand to State Court filed by the chapter 7 Trustee ("the Trustee") and Jose Alberto Rodriguez, Patricia Rodriguez, individually as next friend of Roberto Rodriguez, and Maria Rodriguez ("the Rodriguezes") ("Motion to Remand") (docket no. 8).

**1. Jurisdiction**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## 2. Background

On February 13, 2009, joint debtors[1] Anita C. Ramirez and Leonardo Ramirez, Sr. ("Debtors") filed this adversary proceeding against the Rodriguezes. The adversary concerns: (1) the dischargeability of a $19.5 million judgment against Debtors from a 2006 state court lawsuit[2] ("the 2006 case") with the Rodriguezes; (2) the validity of Debtors' 2005 and 2006 transfers to their children of real property that Debtors contingently claim as an exempt homestead; and (3) interests in certain certificates of deposit that Debtors claim they held only as nominal owners. Debtors request injunctive relief and a declaratory judgment.

On the petition date, Debtors removed a pending state court lawsuit that was initiated in 2008[3] ("the removed case"). Debtors seek to have the removed case joined with the declaratory judgment adversary proceeding. In the removed case, the Rodriguezes are suing Debtors, their three children and two other persons[4] for: (1) Debtors' alleged fraudulent transfers of the real property Debtors now contingently claim as homestead and of certain personal property that include the same certificates of deposit involved in the adversary; and (2) common law fraud. The Rodriguezes assert that Debtors, in concert with the other defendants, transferred their assets to the other defendants with the intent to hinder, delay, and defraud the Rodriguezes from recovering their $19.5 million judgment from the 2006 case. The Rodriguezes are seeking: (1) a judgment voiding the transfers under the Texas Uniform Fraudulent Transfer Act ("the TUFTA

---

[1] Ms. Ramirez filed for chapter 7 relief on January 16, 2009 under case no. 09-70051. On January 22, 2009, Mr. Ramirez attempted to be added as a debtor to Ms. Ramirez's case. Mr. Ramirez filed his own chapter 7 case under case no. 09-70133 on February 17, 2009. Two days later, the Court consolidated the cases into a joint case under case no. 09-70051 (docket no. 27).

[2] Cause No. C-414-06-F from the 332nd Judicial District Court of Hidalgo County, Texas.

[3] Cause No. C-637-08-F from the 332nd Judicial District Court of Hidalgo County, Texas.

[4] Debtors' three children, Leonardo Ramirez, Jr., Feliberto Ramirez, and Alicia Ramirez are named defendants. The two other persons named as defendants are Anita Garza and Feliberto Ramirez, Jr., Debtors' grandson.

claim"); (2) a recovery against each defendant-transferee for a sum of at least $5,000,000.00; (3) punitive or exemplary damages of at least $3 million against each individual defendant; (4) court costs; (5) legal fees of at least $225,000.00; (6) pre-judgment and post-judgment interest; and (6) all other remedies at law or in equity.

On February 24, 2009, the Trustee filed a Motion to Intervene in Adversary as True Party-Plaintiff and Demand for Jury Trial (docket no. 7), which the Court granted on March 16, 2009 (docket no. 16). The Court designated the Trustee as the sole party-plaintiff with respect to the TUFTA claim and as a co-party plaintiff with the Rodriguezes as to the balance of the claims in the removed case.

### 3. The Motion to Remand

The Trustee and the Rodriguezes filed the Motion to Remand on February 24, 2009. The Trustee and the Rodriguezes assert that: (1) because Debtors did not comply with the removal requirements under 28 U.S.C. § 1446, FED. R. BANKR. P. 9027, and Local Rule 9027, Debtors' Notice of Removal is defective; (2) the removed case is based on state law claims and should proceed in state court; and (3) at the very least, the Court should permissively abstain or equitably remand the removed case.

On March 16, 2009, the Court conducted a hearing on the Motion to Remand and made the following rulings on the record:

(1) The Trustee and the Rodriguezes are not requesting abstention with respect to Debtors' declaratory action regarding dischargeability of the $19.5 million judgment. As such, Debtors' declaratory action remains with the Court.[5]

(2) With respect to Debtors' defective Notice of Removal, it is a procedural issue that does not divest the Court of jurisdiction to determine the substantive merits of abstention.

---

[5] The Trustee and the Rodriguezes' TUFTA claim and Debtors' declaratory action regarding the validity of the same transfers are identical. As such, the Court combines Debtors' declaratory action regarding the validity of the transfers with the TUFTA claim.

The Court subsequently granted Debtors leave to correct defects in the original Notice of Removal. The First Amended Notice was filed April 17, 2009. With respect to mandatory abstention, permissive abstention, and equitable remand, the Court ordered the parties to submit briefs.

### A. Mandatory Abstention

The Trustee and the Rodriguezes argue that mandatory abstention applies pursuant to 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides that:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). In other words, the Court:

> must abstain from hearing a state law claim if the following requirements are met: (1) a motion has been timely filed requesting abstention; (2) the cause of action is essentially one that is premised on state law; (3) the claim is a non-core proceeding, i.e. it is "related to" a case under title 11 but does not arise under or in a case under title 11; (4) the proceeding could not otherwise have been commenced in federal court absent federal jurisdiction under § 1334(b); (5) an action has been commenced in state court; and (6) the action could be adjudicated timely in state court.

*J.T. Thorpe Co. v. Am. Motorists*, No. H-02-4598, 2003 U.S. Dist. LEXIS 26016, at *10 (S.D. Tex. June 6, 2003). *See Schuster v. Mims* (*In re Rupp & Bowman Co.*), 109 F.3d 237, 239 (5th Cir. 1997).

The claims were removed to this Court on February 13, 2009. The Motion to Remand was filed on February 24, 2009, within 30 days after the notice of removal. As a result, the Motion to Remand was timely filed. 28 USC § 1447(c). The first requirement is met. The

claims at issue are the TUFTA and common law fraud claims. Both of these claims are premised on state law, so the second requirement is met. The claims have no independent basis for federal jurisdiction other than § 1334(b). Therefore, the fourth requirement is met. Finally, the removed claims were initially filed in state court. The fifth requirement is met. The third and last requirements remain.

With respect to the third requirement, whether the claim is core or non-core, the Court finds it helpful to clarify how core status relates to bankruptcy jurisdiction. "Bankruptcy jurisdiction extends to four types of proceedings: (1) cases 'under' title 11, that is, the bankruptcy petition; (2) proceedings 'arising under title 11;' (3) proceedings 'arising in' a bankruptcy case; and (4) proceedings 'related to' a bankruptcy case." *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008) (citing 28 U.S.C. § 1334(b); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005)); *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 92 (5th Cir. 1987). "'[A]rising under title 11' . . . describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 96. "The meaning of 'arising in' proceedings is less clear, but seems to be a reference to 'those administrative' matters that arise *only* in bankruptcy cases." *Id.* at 97 (citing 1 COLLIER ON BANKRUPTCY ¶ 3.01 at 3-27 (1987)) (emphasis original). "Related to" proceedings are those where "'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" *Id.* at 93 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original). Even when there is a "possibility [a] suit may ultimately have no effect on the bankruptcy," this possibility is not enough to conclude "that it will have no *conceivable* effect." *Id.*

Section 157(b)(2) of Title 28 contains a list of "core-proceedings." 28 U.S.C. § 157(b)(2)(A)–(P). However, not all claims that fit within the literal language of § 157(b)(2)

can be treated as core claims consistent with the Supreme Court's *Marathon* decision. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (U.S. 1982). For example, § 157(b)(2)(O) characterizes as core proceedings any proceeding that could affect "the adjustment of the debtor-creditor" relationship. Any state law contract or tort claim will affect the debtor-creditor relationship and fit within the literal language of § 157(b)(2)(O) in that the outcome of the claim could increase or decrease estate assets available for distribution to creditors. However, *Marathon* found it unconstitutional for bankruptcy courts to exercise full Article III judicial authority over many types of pure state law claims. *Id*.

In *Marathon*, the defendant challenged the constitutionality of a bankruptcy court's authority to exercise full Article III judicial power over breach of contract, warranty, misrepresentation, coercion, and duress claims asserted against defendant. *Id*. at 56–57. These state law claims would affect the debtor's estate and fall under the literal language of § 157(b)(2)(O) in that they could lead to a judgment that would increase estate assets. Yet *Marathon* explicitly stated that bankruptcy courts could not exercise Article III judicial power with respect to pure state law claims that involved purely private rights unrelated to the bankruptcy process. The Court held:

> But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Id*. at 71.

Under the Constitution, Article I bankruptcy courts can issue final orders only with respect to public rights, unless all parties consent to the issuance of final orders by the bankruptcy judge. Accordingly, the Supreme Court held that state law causes of action that do not implicate bankruptcy-related public rights could only be resolved through final orders by

Article III courts. Subsequently, § 157's core versus non-core claims provision and the report and recommendation system were born.

Accordingly, if § 157(b)(2)(O) were read to include any money damages that may be owed to the debtor at the conclusion of litigation, then bankruptcy courts would issue final orders on the very state law private causes of action implicated in *Marathon*.

To read § 157(b) consistently with *Marathon*, courts have held that proceedings must arise under Title 11 or arise in a case under Title 11, in addition to falling within one of § 157(b)'s enumerated items. Accordingly, some courts have integrated the § 1334 jurisdictional inquiry with the § 157(b) core versus non-core inquiry. For example, the Third Circuit has crafted a two-part test incorporating § 157(b)'s enumerated list of core proceedings and the standards used for defining bankruptcy courts' § 1334 jurisdiction. The Third Circuit holds that, to determine whether a claim is core:

> a court must first look to the illustrative list of "core" proceedings in § 157(b)(2). It must then conduct [a] two-step test, according to which a claim will be deemed core "if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."

*Exide*, 544 F.3d at 206 (quoting *Halper*, 164 F.3d at 836). The Fifth Circuit has also held that a proceeding is core only "if it *invokes a substantive right provided by title 11* or it is *a proceeding that, by its nature, could arise only in the context of a bankruptcy case*." *Wood*, 825 F.2d. at 97 (emphasis added).

The TUFTA claim is an action to avoid the alleged fraudulent transfers, which is part of the illustrative list of core proceedings under § 157(b)(2). 28 U.S.C. § 157(b)(2)(H) (listing a proceeding to avoid a fraudulent conveyance as a core proceeding); *Duck v. Munn* (*In re Mankin*), 823 F.2d 1296, 1300 (9th Cir. 1987) (stating that a proceeding to avoid fraudulent

conveyances, whether under 11 U.S.C. § 548 or § 544, is core under 28 U.S.C. § 157(b)(2)(H)). As ordered by the Court, the Trustee is deemed the sole-party plaintiff to the TUFTA claim. While the TUFTA claim is rooted in state law, it is now a federal claim under 11 U.S.C. § 544 as a result of the commencement of the bankruptcy case (as evidenced by the Trustee's intervention) and "invokes a substantive right provided by title 11." *Carlton v. Baww, Inc.*, 751 F.2d 781, 788 (5th Cir. 1985); *Patterson*, 337 B.R at 92-93 (quoting *Wood*, 825 F.2d at 97). Therefore, the TUFTA claim is core. The third requirement for mandatory abstention is not met. As a result, even if the last requirement is met, mandatory abstention cannot apply to the TUFTA claim because all six requirements must be met. *Patterson*, 337 B.R. at 93.

As to the common law fraud claim to which the Trustee and the Rodriguezes are co-party plaintiffs, the theory is that Debtors and the other defendants defrauded the Rodriguezes by participating in the alleged fraudulent transfers of Debtors' real and personal properties. The Fourth Amended Petition states that the alleged fraudulent transfers were "part of one continuous scheme, artifice and common law fraud upon" the Rodriguezes and "were a joint effort by each Defendant to defraud Plaintiffs."  (docket no. 2-2).  While the Trustee and the Rodriguezes characterize this as a common law fraud claim, this claim is more aptly characterized as a claim for aiding and abetting or conspiracy to commit fraudulent transfers.

Under Texas law, common law fraud requires: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party; and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, No. 08-10414, 2009 U.S. App. LEXIS 7133, at *30 (5th Cir. Apr. 8, 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F.Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v.*

*Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). None of the pled facts support a common law fraud claim. Instead, they describe a series of alleged fraudulent transfers of Debtors' real and personal properties to the other defendants. There are no allegations concerning Debtors or the other defendants' misrepresentations to the Rodriguezes. As such, the common law fraud claim does not apply to any defendants.

At most, the pled facts support a claim for either aiding and abetting or conspiracy. Aiding and abetting requires: "'(1) the existence of a . . . violation by the primary (opposed to the aiding and abetting) party; (2) 'knowledge' of this violation on the part of the aider and abetter; and (3) 'substantial assistance' by the aider and abetter in the achievement of the primary violation.'" *Hill v. Day* (*In re Today's Destiny Inc.*), No. 06-3285, 2009 WL 1232140, *6 (Bankr. S.D. Tex. May 1, 2009) (quoting *Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F.Supp. 1066, 1082 (S.D.N.Y. 1987)). "'The elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury.'" *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *Eagle Props., Ltd. v. KPMG Peat Marwick*, 912 S.W.2d 825, 828 (Tex. App.—El Paso 1995, writ denied)).

Defendants are accused of having been part of a continuous scheme to defraud the Rodriguezes through a series of alleged fraudulent transfers of Debtors' real and personal properties to the other defendants. This assertion supports the theories that Debtors, with the aid of or in conspiracy with the other defendants, defrauded the Rodriguezes through the series of fraudulent transfers. The violation that forms the aiding and abetting or conspiracy claim is each of the alleged fraudulent transfers. Because the pled facts support an aiding and abetting or conspiracy claim, the Court re-characterizes the Trustee and the Rodriguezes' self-titled common

law fraud claim as an aiding and abetting or conspiracy claim.  *See Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933. 936 (5th Cir. 2005) (district courts must "determine the true nature of a pleading by its substance, not its labels"); *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).

Mandatory abstention does not apply to the aiding and abetting or conspiracy claim. First, it is an action designed to recover a fraudulent conveyance (albeit on a twist on the legal theory) that is part of the illustrative list under § 157(b)(2).  28 U.S.C. § 157(b)(2)(H).  The aiding and abetting or conspiracy claim is a claim for damages.  It is a tort liability theory.  *See* RESTATEMENT (SECOND) OF TORTS § 876 (1979); 16 AM. JUR. 2D. *Conspiracy* § 3 (2009) ("The relevant difference between conspiracy and accomplice liability is that, while an agreement is an essential element of . . . conspiracy, aid sufficient for accomplice liability may be given without any agreement between the parties.").[6]  *See also* 16 AM. JUR. 2D *Conspiracy* § 50 (2008) ("[T]he action [for conspiracy] is one for damages arising out of the acts committed pursuant to the conspiracy."); *Id.* at 53 ("The gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement or its execution.").  As a tort liability theory, the claim is derivative of an underlying tort because without independent tortious conduct, there is no actionable claim.  *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 709 (5th Cir. 2009).  The underlying tort is each of the alleged fraudulent transfers.  Like a recovery action under 11 U.S.C. § 550, the aiding and abetting or conspiracy claim depends on avoiding the underlying alleged fraudulent transfer.  11 U.S.C. § 550 ("[T]o the extent that a transfer is avoided under

---

[6] The Court recognizes that the quoted phrase compares conspiracy and aiding and abetting for criminal liability. However, for our purposes here, the quoted phrase equally applies to conspiracy and aiding and abetting theories with respect to civil liability.

[certain sections of title 11], the trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property . . .").

Moreover, as a liability theory, the aiding and abetting or conspiracy claim operates in the same manner as a recovery action under 11 U.S.C. § 550 in seeking liability from more than one party.  *Compare* 16 AM. JUR. 2D *Conspiracy* § 57 (2008) ("A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts. . . . [E]ach is jointly and severally liable.") *and* 11 U.S.C. § 550 (allowing a trustee to recover property or the value of property from an avoided transfer from the initial transferee or any immediate or mediate transferee, subject to certain defenses, and subject to a single satisfaction).  The examples listed in § 157(b) are illustrative only and are not limited to the specific matters listed.  When the sought-after recovery is of the same underlying damages and when those damages arise from a fraudulent conveyance, the claim lies within the Court's core jurisdiction.

The Court notes that the aiding and abetting or conspiracy claim is a state law cause of action that could exist outside the bankruptcy context.  The claim does not arise under a specific provision of title 11 nor is it the type of claim that could exist only within a bankruptcy case.  State statutes have fraudulent transfer provisions creating causes of action outside the bankruptcy process.

Nevertheless, the court's characterization of the aiding and abetting or conspiracy claim as a core proceeding is consistent with the Supreme Court's *Marathon* decision.  The claim implicates public rights that constitute core proceedings.  The essential difference between the aiding and abetting or conspiracy claim and the claims at issue in *Marathon* is that the aiding and abetting or conspiracy claim seeks the return of property wrongfully removed from the estate

rather than seeking a judgment for damages that would bring into the estate separate funds that were not previously estate property. Therefore, the claim is not simply between private individuals. Rather, the claim strikes at the heart of restructuring debtor-creditor relations by ensuring that debtors cannot defraud innocent creditors by fraudulently transferring estate assets out of the estate.

Actions to recover estate property wrongfully removed from the estate and for the benefit of the estate and its innocent creditors are unquestionably core proceedings. Section 544 gives the estate the right to avoid fraudulent transfers pursuant to applicable state law. Section 548 creates an additional and independent right to recover transfers deemed fraudulent under that section. Section 550 gives trustees the right to recover fraudulent and other avoidable transfers from the initial or subsequent transferees. All are core matters. All empower the trustee to bring back to the estate property that should have never left the estate. Recovering property wrongfully removed from the estate is at the core of what bankruptcy courts do.

The complaint alleges that defendants aided and abetted or conspired to fraudulently transfer property from the debtor to the aiding and abetting or conspiring defendants. Through the aiding and abetting or conspiracy claims, the Trustee and the Rodriguezes seek to recover the value of the alleged fraudulent transfers. The aiding and abetting or conspiracy claim is simply an alternative theory by which the plaintiffs seek to recover the fraudulent transfers. The theory is different, but the purpose and effect is the same. The purpose is to return estate property that was allegedly wrongfully removed from the estate and the effect is to make the estate whole. The claim seeks to recover the alleged fraudulent transfers and is therefore a core proceeding.

A contrary conclusion would impermissibly allow plaintiffs to divest bankruptcy courts of jurisdiction over fraudulent transfer, avoidance, and recovery claims by merely adding an

aiding and abetting or conspiracy claim. Fraudulent transfers cannot be committed by a single individual. Multiple parties will always be involved and plaintiffs will often be able to assert a colorable aiding and abetting or conspiracy claim. If the aiding and abetting or conspiracy claim were deemed non-core, then plaintiffs could usurp Congress's authority to delineate the scope of a bankruptcy court's jurisdiction. Neither *Marathon* nor Congress ever envisioned or intended such a result. There is no sound basis under § 157, § 1334(c)(2), *Marathon*, or public policy that would justify characterizing the aiding and abetting or conspiracy claims as non-core.

### B. Permissive Abstention

Though the Court is not required to abstain from hearing the TUFTA or the aiding and abetting or conspiracy claims, the Court may abstain using its discretion under 28 U.S.C. § 1334(c). *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1206 (5th Cir. 1996) ("A court . . . may abstain at its discretion from deciding either core or non-core proceedings . . . ."); *Villareal v. Showalter* (*In re Villareal*), No. 08-70002, No. 08-07001, 2008 Bankr. LEXIS 694, at *18 (S.D. Tex. Mar. 14, 2008) ("[T]he Court [has] broad discretion to refrain from hearing both core and non-core proceedings involving state law claims."). "Nothing . . . prevents a court from permissively abstaining under § 1334(c)(1) where some, but not all, of the requirements for mandatory abstention are met." *Gober*, 100 F.3d at 1206-07. The Court has "broad discretion to abstain . . . whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Id.* at 1206 (quoting 28 U.S.C. § 1334(c)(1)).

Courts have developed a long list of nonexclusive factors to consider in determining whether permissive abstention is appropriate, including:

(1) the effect or lack thereof on the efficient administration of the estate;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy docket;

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*J.T. Thorpe Co.*, No. H-02-4598, 2003 U.S. Dist. LEXIS 26016, at *23. *See also Wiley v. Southland Sys., Inc.* (*In re Southland Sys., Inc.*), No. 06-33995, 2007 Bankr. LEXIS 3381, at *10-11 (S.D. Tex. Sept. 21, 2007); *Villareal*, No. 08-70002, No. 08-07001, 2008 Bankr. LEXIS 694, at *18-19.

The Court finds the following factors weigh heavily against abstention: (1) the effect or lack thereof on the efficient administration of the estate; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; and (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping

by one of the parties. Of these factors, the Court pays particular attention to factors (1), (6), and (7) because they have to do with the Court's central role in ensuring an equal and pro-rata distribution of estate assets to all creditors. *MortgageAm.*, 714 F.2d at 1273. The Court also finds it important not to abstain based on Debtors' contingent claim of homestead as part of an effort to efficiently administer Debtors' estate.

The remaining factors either counsel against or are neutral to abstention.

### C. Equitable Remand

Under § 1452(b), "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on *any* equitable ground." 28 U.S.C. § 1452(b) (emphasis supplied). Permissive abstention and equitable remand are very similar:

> Title 28 U.S.C. §§ 1452(b) (remand) and 1334(c) (abstention) are kindred statutes and the analysis under each have considerable overlap. Section 1452(b) favors comity and the resolution of state law questions by state courts, as does § 1334(c). Together, §§ 1452(b) and 1334(c) strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed in state court, at least where there is no basis for federal jurisdiction independent of § 1334 and the litigation can be timely completed in state court. Because the statutes are similar in purpose and spirit, circumstances which weigh in favor of discretionary abstention or dictate mandatory abstention under the respective subsections of § 1334(c), likewise weigh in favor of or constrain remand under § 1452(b).

*J.T. Thorpe Co.*, No. H-02-4598, 2003 U.S. Dist. LEXIS 26016, at *21 (citing *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001)). As a result, the 14 factors listed above in considering permissive abstention also apply to equitable remand. *Id.*, at *23. *See also Southland Sys., Inc.*, No. 06-33995, 2007 Bankr. LEXIS 3381, at *10-11; *Villareal*, No. 08-70002, No. 08-07001, 2008 Bankr. LEXIS 694, at *18-19. For the same reasons above, the Court finds it also appropriate not to equitably remand the TUFTA and the aiding and abetting or conspiracy claims.

The following is a set of additional factors that also apply in equitable remand:

(1)  *forum non conveniens*;

(2)  whether the civil action has been bifurcated during removal, which favors a trial of the entire action in state court;

(3)  whether the state court has greater ability to respond to questions of state law;

(4)  the particular court's expertise;

(5)  the inefficiencies of proceedings in two forums;

(6)  prejudice to the involuntarily removed party;

(7)  comity; and

(8)  possibility of an inconsistent result.

*Southland Sys., Inc.*, No. 06-33995, 2007 Bankr. LEXIS 3381, at *11 n.3 (citing *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 603 n.1 (S.D. Tex. 1999)).

While most of these additional factors are neutral to remand, the Court finds factor (5) relevant in counseling against remand. As a result, the Court's findings to retain the claims are consistent with the stated goals of efficiency and economy.

**4. Conclusion**

For the reasons stated above, the Trustee and the Rodriguezes' Motion to Remand is denied. A separate order will be issued.

SIGNED **June 24, 2009.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE