

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

ENTERED
05/11/2010

| | | |
|---|---|---|
| IN RE: | § | |
| **ANITA C RAMIREZ,** | § | **Case No. 09-70051** |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **ANITA RAMIREZ,** | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **Adversary No. 09-07004** |
| | § | |
| **JOSE ALBERTO RODRIGUEZ,** *et al*, | § | |
| Defendant(s). | § | **Judge Isgur** |

## MEMORANDUM OPINION IMPOSING SANCTIONS

Prior to removal, the state court ordered Anita C. Ramirez to produce certain documents requested by the Rodriguezes.  After removal, Anita C. Ramirez still failed to produce the documents.  The Rodriguezes then filed a motion for sanctions in this Court.

Anita C. Ramirez alleged that her failure to fully comply with the state court order was due to mental incompetency, an issue on which the Court conducted an evidentiary hearing. Following the hearing, the Court found that Anita C. Ramirez is mentally competent, despite her elderly age of 87.  The Court further found that her failure to fully comply with the state court order was not the result of mental incompetency, but rather, the result of her failure to maintain any documents.

Combined with the state court finding that Anita C. Ramirez once had the ability to produce the documents requested by the Rodriguezes, the Court concludes that Anita C. Ramirez's subsequent failure to maintain any documents amounts to a form of evidence

spoliation that was committed in bad faith.  Her failure to fully comply with the state court order is not excusable and warrants the imposition of sanctions under Rule 37(b)(2).

## Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b). Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

## Procedural Background and Facts

On February 13, 2009, joint debtors Anita C. Ramirez and Leonardo Ramirez, Sr. initiated this adversary proceeding by removing[1] a 2008 state court fraudulent transfer action against them from the 332nd Judicial District Court of Hidalgo County, Texas.  In their Fifth Amended Complaint (docket no. 102), Plaintiffs[2] allege that the Ramirezes transferred their real property and certain personal properties[3] to their children with the intent to hinder, delay and defraud the Rodriguezes from recovering the Rodriguezes' $19.5 million state court judgment against the Ramirezes.  The $19.5 million judgment was issued in the Rodriguezes' separate 2006 state court action against the Ramirezes for Mr. Ramirez's intentional shooting of Roberto

---

[1] The Court notes that the Ramirezes originally initiated this adversary proceeding to determine the dischargeability of the Rodriguezes' $19.5 million judgment against them before the notice of removal was filed for the 2008 state court fraudulent transfer action (docket nos. 1, 2).  However, on August 24, 2009, the Rodriguezes initiated a separate adversary proceeding under case no. 09-07012, objecting to the dischargeability of their $19.5 million judgment against the Ramirezes.  Therefore, this adversary proceeding is limited to the alleged fraudulent transfer claims only as reflected by Plaintiffs' Fifth Amended Complaint (docket no. 102).  In case no. 09-07012, on March 16, 2010, the Court issued a judgment finding that the Rodriguezes' $19.5 million judgment is excepted from discharge.

[2] After the Ramirezes filed for bankruptcy, the chapter 7 Trustee intervened in this adversary proceeding as the true party in interest.  The Court designated the Trustee as the sole party plaintiff with respect to the TUFTA claims and as co-party plaintiff with the Rodriguezes as to the balance of the fraud claims (docket no. 16).

[3] The personal properties include horses, a saddle, cattle, goats, firearms, vehicles, cash, farm and ranch equipment as well as funds from certain certificates of deposits.  Plaintiffs have pled that the personal properties at issue are non-exempt.  However, the Ramirezes have argued that they are exempt personal properties.  Without making any findings with respect to whether the personal properties are exempt, the Court notes that according to the Ramirezes' Schedule C, the only personal properties the Ramirezes claim as exempt are a 1998 pick up truck, 4 chickens, and 1 pig (case no. 09-70051, docket no. 61).

Rodriguez.[4]  The shooting incident left Roberto Rodriguez with quadriplegia.  Plaintiffs further allege that the transferee-defendants, which include a grandchild of the Ramirezes, aided and abetted or conspired in the fraudulent transfers.[5]

Plaintiffs seek:

1. A judgment that the transfers were fraudulent under the Texas Uniform Fraudulent Transfer Act (the "TUFTA claims"), either under TEX. BUS. & COM. CODE ANN. § 24.005(a)(1) (the transfers were made with the actual intent to hinder, delay, or defraud) or under TEX. BUS. & COM. CODE ANN. § 24.006(a) (the transfers were made without reasonable equivalent value and the Ramirezes were insolvent at the time of the transfers);

2. A judgment voiding the transfers or otherwise allowing for the recovery of the assets under TEX. BUS. & COM. CODE ANN. § 24.008(a)-(b);

3. Judgments against each defendant-transferee for the value of the transferred assets of at least the sum of $900,000 under TEX. BUS. & COM. CODE ANN. § 24.009(a)(1) (entry of judgment against the first transferee);

4. Actual damages of at least $500,000;

5. Special and consequential damages for mental anguish of at least $5 million;[6]

6. Punitive or exemplary damages of at least $3 million;

7. Court costs;

8. Pre-judgment and post-judgment interest;

9. Legal fees; and

10. All other remedies available at law or in equity.

---

[4] The Ramirezes have listed the 2006 state court judgment as a disputed, unsecured debt on their amended Schedule F (case no. 09-70051, docket no. 6, referring to the 2006 state court judgment as Cause No. C-414-06-F).  However, the debt amount listed is $31.2 million instead of $19.5 million.

[5] Plaintiffs have pled a common law fraud theory against the defendant-transferees.  However, the Court has previously re-characterized the common law fraud claim as a claim for aiding and abetting or conspiracy to commit fraudulent transfers.  *Ramirez v. Rodriguez* (*In re Ramirez*), 413 B.R. 621, 628-29 (Bankr. S.D. Tex. 2009).

[6] The Court notes that Plaintiffs have requested different amounts for special and consequential damages on pages 7 and 12 of their Fifth Amended Complaint, respectively.  The Court has taken the higher amount as the requested relief.

**The Motion for Sanctions**

Prior to removal, the Rodriguezes had filed a motion to compel production of certain documents from Mrs. Ramirez that were previously requested in their subpoena duces tecum (docket no. 64, Exh. 1).  After notice and a hearing on November 19, 2008, the state court issued a December 15, 2008 order compelling Mrs. Ramirez to produce the requested documents.  According to the terms of the December 15, 2008 order, the state court found that:  (1) the "requested documents were not produced when [Mrs.] Ramirez had the ability to produce" them; and (2) Mrs. Ramirez had previously been "ordered to produce the same documents" no later than September 22, 2008 in the Rodriguezes' separate 2006 state court action pursuant to an order enforcing a prior turnover order (docket no. 64, Exh. 3).  The Court notes that the December 15, 2008 order required Mrs. Ramirez to produce the requested documents no later than 5:00 p.m. on *December 4, 2008* (docket no. 64, Exh. 3).  The Court can only surmise that the discrepancy between the production deadline and the date of the order was due to a possible lapse in time from when the state court announced its decision to the actual entry of the order.

Mrs. Ramirez did not fully comply with the December 15, 2008 order.  As a result, on September 28, 2009, the Rodriguezes filed an amended motion for sanctions against Mrs. Ramirez in this Court, which sought, among other things, a show cause order against Mrs. Ramirez to show why she should not be sanctioned (docket no. 64).

**1.  The Parties' Dispute**

On February 22, 2010, the Court conducted an evidentiary hearing and heard oral arguments on the amended motion for sanctions.  The Rodriguezes argued that Mrs. Ramirez had failed to produce documents responsive to request nos. 10, 11, 12, and 13, all of which relate to

the Ramirezes' assets that are involved in the alleged fraudulent transfers.[7]   Moreover, the Rodriguezes asserted that Mrs. Ramirez tendered tax returns that evidence her ownership of certain personal properties, including vehicles, a tractor, and a trailer, that have since disappeared.  Due to Mrs. Ramirez's failure to fully comply with the December 15, 2008 order, the Rodriguezes requested the Court to:   (1) issue a $5,000 monetary sanction against Mrs. Ramirez; (2) find that the subject real property has a fair market value of $450,000; (3) find that Mrs. Ramirez perpetuated a fraudulent transfer of $80,000[8] worth of personal properties with the specific intent to hinder, delay and defraud the Rodriguezes; (5) find that Mrs. Ramirez acted with the specific intent to prevent the Rodriguezes from collecting their $19.5 million state court judgment; (6) find that Mrs. Ramirez's conduct caused the Rodriguezes emotional distress; (7) issue a judgment against Mrs. Ramirez for the value of the personal properties transferred, or the voiding of the transfers, with costs, pre-judgment and post-judgment interest, and consequential damages; and (8) issue an award for legal fees.

---

[7] Request no. 10:  "Copies of all bills of sale or other documents evidencing any personal property delivered after January 1, 2005 by:  a. Leonardo Ramirez; b. Anita Cerda de Ramirez; c. Anita Garza, aka Anna Garza; d. Leonardo Ramirez, Jr.; and e. Feliberto Ramirez."

Request no. 11:  "Copies of all bills of sale or other documents evidencing any personal property delivered after January 1, 2005 to:  a. Leonardo Ramirez; b. Anita Cerda de Ramirez; c. Anita Garza, aka Anna Garza; d. Leonardo Ramirez, Jr.; and e. Feliberto Ramirez."

Request no. 12:  "Copies of all documents evidencing any considerations paid for the transfer of any assets between: a. Leonardo Ramirez; b. Anita Cerda de Ramirez; c. Anita Garza, aka Anna Garza; d. Leonardo Ramirez, Jr.; and e. Feliberto Ramirez."

Request no. 13:  "Copies of all non-privileged documents, including, but not limited to receipts, cancelled checks, bank statements, wire transfer documentation, and billing statements evidencing the payment of attorney fees after October 22, 2005 by:  a. Leonardo Ramirez; b. Anita Cerda de Ramirez; c. Anita Garza, aka Anna Garza; d. Leonardo Ramirez, Jr.; or e. Feliberto Ramirez."

[8] The Court notes that in the amended motion for sanctions, the Rodriguezes request a finding that Mrs. Ramirez fraudulently transferred $250,000 worth of personal properties.  However, during oral arguments on February 22, 2010 and in response to the Court's specific inquiry with respect to the type of relief the Rodriguezes' were seeking, the Rodriguezes' counsel stated that the Rodriguezes were seeking a finding that Mrs. Ramirez fraudulently transferred *$80,000* worth of personal properties.

Mrs. Ramirez's position was multifold.  With respect to request no. 13, her counsel alleged that she has complied and is continuing to comply by producing responsive documents. Therefore, he asserted that the parties no longer have a dispute with respect to request no. 13. More importantly, Mrs. Ramirez claimed that she is not mentally competent.  She is 87 years old and contended that she is in poor mental health.  She further stated she was unable to assist her counsel in her written response to the amended motion for sanctions.  She finally insisted that she could not produce the requested documents, which she does not have, but for two receipts relating to the sale of a two-horse trailer, a welder, and an irrigation pump line hose (docket no. 101, Exh. 1).[9]

## 2.  The Court's Findings Regarding Mrs. Ramirez's Alleged Mental Incompetency

At the February 22, 2010 hearing, Mrs. Ramirez testified with respect to her failure to comply with the December 15, 2008 order, especially on the issue of her mental incompetency. She was directly examined and cross-examined on various matters, including her address, her living situation, whether she understood why she was testifying, how she pays for bills, what assets she owns, and whether she maintains documents.

On direct examination, she gave competent and responsive answers that included:  (1) her knowledge that the lawsuit is a result of Mr. Ramirez's shooting of Roberto Rodriguez; (2) a full explanation of her minimal, monthly social security benefits; (2) her children's role as her primary source of financial support and care; (3) her children's management over payment of all

---

[9]  The Court notes that Mrs. Ramirez also argued that the personal properties at issue, particularly the farm equipment and farm animals, are exempt.  She claimed that because the personal properties are not subject to execution, they are irrelevant to the case at hand.  As discussed above, the Ramirezes have only claimed the following personal properties as exempt on their Schedule C:  a 1998 pick up truck, 4 chickens, and 1 pig (case no. 09-70051, docket no. 61).  The Rodriguezes have pled that the personal properties at issue are non-exempt (docket no. 102).  Thus, the issue of which personal properties at issue are exempt or non-exempt is very much alive and relevant to the Rodriguezes' discovery efforts.  Moreover, at this juncture before the issues have been litigated, the Court will not address whether the personal properties are indeed subject to execution.

household utilities and bills; and (4) her lack of ownership over any assets because her children are the true owners.

Conversely, on cross-examination, Mrs. Ramirez appeared to have difficulty hearing and comprehending questions, even though she did not have any problems during direct examination. Generally, she claimed a lack of memory or a lack of knowledge with respect to the whereabouts of certain personal properties, including the tractor, the trailer, and the farming equipment, even though she could recall details of certain assets when pressed by the Rodriguezes' counsel.  She explained that "everything was sold," perhaps by Mr. Ramirez, but volunteered that she had no participation in or knowledge of the transfers.  When Mrs. Ramirez was asked about documents relating to the personal properties, she maintained that she had a lack of memory as a result of her old age.  She further testified that she kept essentially no documents.

The following four transcript excerpts illustrate Mrs. Ramirez's testimony:

Excerpt 1 (from direct examination by Mrs. Ramirez's counsel):

Q:      Where do you live?
A:      I live in Abram, Texas.
Q:      How old a woman are you?
A:      Eighty-seven.  I'm going to be 87.
Q:      Do you understand why you're here today?
A:      Well, because my husband did some damage and that's why I've been called but I have nothing to do with this thing, that's why.
Q:      Do you remember when you were deposed by [the Rodriguezes' counsel] who's at the table?
A:      Yes.  I don't recall, no, I don't remember anything.
. . . .
Q:      Now in the past five years, you reported on income tax returns that you owned certain properties.
A:      Several?
Q:      That you owned –
A:      We don't have too many.
Q:      What properties did you have?
A:      Well, we have a few.  We don't have too many.
. . . .

Q:      Can you describe what personal property that you had in the past five years?

A:      No, we haven't had any anymore.

Transcript of Record at 4-5 (docket no. 141).

Excerpt 2 (from cross-examination by the Rodriguezes' counsel):

Q:      You used to own a tractor that was taller than I am, right?

A:      Well, who knows?  [Mr. Ramirez] must have sold everything because I don't – I did not find out about that.

Q:      But you used to see the tractor in your barn, right?

A:      He sold everything, everything, I didn't.

Q:      But you used to see the tractor there, right?

A:      No, we do not have anything.

Q:      I know that the tractor's gone now but before the tractor –

A:      Everything was sold in order to pay the attorney.

Q:      Okay.  Now, do you have the papers where he sold the tractor?

A:      No, I do not have anything.

Q:      All right.  And you said that you had cows a long time ago, right?

A:      Oh, yes, many years ago.

Q:      And you've given me tax returns –

A:      It's an old house.

Q:      I'm talking about cows right now, okay?  All of your cows and your tractor and the tractor equipment –

A:      It was not a lot.  What could I do, I was sick.

Q:      My question is you reported all of that equipment on your tax returns, right?

A:      Yes, but you cannot do that anymore because everything has been sold.  I was sick.  I broke my ankle and that's correct.

Q:      Now additionally, in you tax returns, you showed me that you were keeping records of all your properties.

A:      Yes, but I do not remember anymore.  I do not remember.  I'm very old already.

Q:      But you live at home, right?

A:      No, it's not mine, it's the children[']s.

Q:      But you live there?

A:      I live in that house, in the old house.

*Id.* at 11-12.

Excerpt 3 (from cross-examination by the Rodriguezes' counsel):

Q:      . . . Your daughter says she gave you $150,000.  Do you remember her giving you $150,000?

. . . .

A:      No, I don't remember any more.  I don't remember many things anymore.
Q:      Okay.  So you can't show me –
A:      I'm very old already and I was already sick.
Q:      Okay.   But you remember transferring the property to your children's names, right?
A:      Well, the reason is because since I'm sick.  If I were to die tomorrow they will not have problems.
Q:      Okay.  And you did that at the bank too.  You remember doing that, right?
A:      Yes.

*Id.* at 14-15.

Except 4 (from the Court's exchange with Mrs. Ramirez regarding documents she keeps):

Q:      Ms. Ramirez, do you have any important papers at home?
A:      No.
Q:      Where do you keep your important papers?
A:      Well, maybe I have them.  I don't have too many papers, almost none.
Q:      So where do you keep what you do have that's an important paper?
A:      Well, you know, in a box.  The bills for water and electricity that I do.
Q:      What about papers that show who owns what?
A:      Not that.  [The children] pay their own taxes, they have them.
Q:      Who has what?
A:      Well, they do, they are the owners.

*Id.* at 16.

As the above transcript excerpts illustrate, Mrs. Ramirez demonstrated an understanding of all the questions, but selectively answered them, engaging in evasive responses when they suited her.  At the end of Mrs. Ramirez's testimony, the Court found that, despite Mrs. Ramirez's elderly age, Mrs. Ramirez was competent and lucid.  The Court found that Mrs. Ramirez failed to comply with the portion of the December 15, 2008 order compelling her to produce documents responsive to requests no. 10, 11, and 12.  Her failure to produce documents was a result of an inexcusable, bad faith failure to maintain documents.

**Analysis**

**1.  Bankruptcy Rule 9027 and 28 U.S.C. § 1450**

Bankruptcy Rule 9027 governs cases removed to the bankruptcy court pursuant to 28 U.S.C. § 1452.  Rule 9027(i) provides, in relevant part, as follows:  "All injunctions issued, orders entered and other proceedings had prior to removal shall remain in full force and effect until dissolved or modified by the court."  FED. R. BANKR. P. 9027(i).

Bankruptcy Rule 9027(i) is based on 28 U.S.C. § 1450.  *Compare* FED. R. BANKR. P. 9027(i) *and* 28 U.S.C. § 1450 (also providing that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect . . . .").  Bankruptcy Rule 9027(i) was formerly Bankruptcy Rule 9027(k).  *See* FED. R. BANKR. P. 9027(k) (1983) (amended 1987, 1991, 2002, 2009).  The advisory committee's note reflects that former subdivision (k) was derived from 28 U.S.C. § 1450.  FED. R. BANKR. P. 9027 advisory committee's note (1983).  *See also Protector Corp. v. Passport Chem. Co.*, No. 85 C 1146, 1985 U.S. Dist. LEXIS 17607, *2 (N.D. Ill. Jul. 23, 1985) ("[Bankruptcy] Rule 9027 is patterned on 28 U.S.C. §§ 1446-1450, which govern removal of cases from state courts to federal district courts . . ."); *In re Sanctions for Failure to Comply with a Court Order*, 58 B.R. 560, 570 (D. Conn. 1985) (stating in a citation parenthetical that Bankruptcy Rule 9027 is the bankruptcy analogue to 28 U.S.C. § 1450); *In re Wills Motors Inc.*, 133 B.R. 297, 301 n.1 (Bankr. S.D.N.Y. 1991).  Therefore, the Court looks to 28 U.S.C. § 1450 and its case law to determine the effect bankruptcy removal has on state court orders under Bankruptcy Rule 9027(i).[10]

---

[10] The Court notes that other courts have taken a slightly different route in which they have applied 28 U.S.C. § 1450 directly to the bankruptcy removal context.  *Mathews v. Traverse* (*In re Traverse*), No. 91-16905, 91-16906, 1994 U.S. App. LEXIS 8881, at *4-5 (9th Cir. Apr. 13, 1994) (upholding a bankruptcy court's Rule 37(b)(2) sanctions against a party for failing to comply with a state court discovery order that was issued prior to the removal of the case based on 28 U.S.C. § 1450); *Mata v. Schoch*, 337 B.R. 138, 144 (S.D. Tex. 2005) (citing 28 U.S.C. § 1450 as the basis for a federal court to reconsider a state court summary judgment in a bankruptcy removal context).  *Cf. Richards v. Farah* (*In re Farah*), 126 Fed. Appx. 66, 70 (3d Cir. 2005) (commenting, in dicta, that "the

Under 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *Id.* at 1450. In *Granny Goose*, the Supreme Court stated that:

> Section 1450 was simply designed to deal with the unique problem of a shift in jurisdiction in the middle of a case which arises whenever cases are removed from state to federal court. In this respect two basic purposes are served. Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court. In addition, the statute ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. Thus attachments, sequestrations, bonds, undertakings, securities, injunctions, and other orders obtained in state court all remain effective after the case is removed to federal court.

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 435-36 (1974). In short, a federal court "'takes the case up where the [s]tate court left it off.'" *Id.* at 436. (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)).

Effectively, "[a] prior state court order . . . is federalized when the action is removed to federal court . . . ." *Res. Trust Corp. v. Northpark Jt. Venture*, 958 F.2d 1313, 1316 (5th Cir. 1992). A federal court "accepts the [removed] case in its current posture 'as though everything done in state court had in fact been done in the federal court,'" such that a federal court is under no obligation "to conduct a determination *de novo* of the propriety of [a state court order entered in] the case upon removal to federal court, every time such an order is contested." *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303-04 (5th Cir. 1988) (quoting *Savell v. S. Ry. Co.*, 93 F.2d

---

similarities between the general removal provisions of 28 U.S.C. § 1441-46 and the removal procedures in bankruptcy would indicate that the effect [of 28 U.S.C. § 1450] should be the same"); *In re RBGSC Investment Corp.*, 253 B.R. 369, 384-85 (Bankr. E.D. Pa. 2000) (pointing to Bankruptcy Rule 9027 and 28 U.S.C. § 1450 for rejecting comity considerations as requiring remand of an adversary proceeding due to the existence of pre-removal state court orders because both statutes provided that the bankruptcy court could dissolve or modify state court orders). The Court does not decide whether 28 U.S.C. § 1450 governs cases in the bankruptcy removal context; rather, the Court finds it sufficient that Bankruptcy Rule 9027(i) applies, which is based on 28 U.S.C. § 1450.

377, 379 (5th Cir. 1937)).  Rather, a federal court is "perfectly free to adopt the state court record as the basis for sustaining a challenged state court order . . . ." *Id.* at 1304.[11]

The December 15, 2008 order is an interlocutory discovery order that remains in effect. *State of La. v. Guidry*, 489 F.3d 692, 697-98 (5th Cir. 2007) ("Interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district courts to which the action is removed." (quoting *Kline*, 845 F.2d at 1304)).  *See also Winstead v. Ga. Gulf Corp.*, 77 Fed. Appx. 267, 269-70 (5th Cir. 2003) (holding that an unchallenged state court issued deadline for adding new parties remained in effect after the case was removed to district court by operation of 28 U.S.C. § 1450); *Kline*, 845 F.2d at 1303 (finding that a state court sanctions order for discovery abuses remained in effect upon removal to the federal court).

Mrs. Ramirez failed to fully comply with the December 15, 2008 order.  Therefore, sanctions are appropriate under Rule 37(b)(2).  *See Mathews v. Traverse* (*In re Traverse*), No. 91-16905, 91-16906, 1994 U.S. App. LEXIS 8881, at *4-5 (9th Cir. Apr. 13, 1994) (upholding a bankruptcy court's Rule 37(b)(2) sanctions against a party for failing to comply with a state court discovery order that was issued prior to the removal of the case based on 28 U.S.C. § 1450).

## 2.  Rule 37(b)(2) Sanctions

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may issue just orders," including various sanctions listed.  FED. R. BANKR. P. 7037; FED. R. CIV. P. 37(b)(2)(A) (emphasis provided).[12]  Orders to provide or permit discovery include orders issued pursuant to Rule 26(f) (scheduling orders), Rule 35 (examination orders), and Rule 37(a) (orders

---

[11] The Court notes that though it has the ability to reconsider the December 15, 2008 order, Mrs. Ramirez has neither moved for reconsideration nor set forth any grounds for reconsideration.

[12] Citations will be to the Federal Rules of Civil Procedure to the extent that they are incorporated by the Federal Rules of Bankruptcy Procedure for adversary proceedings, unless otherwise noted.

compelling). *Id.* Thus, sanctions issued under Rule 37(b)(2) may be imposed even without the issuance of a prior order compelling discovery under Rule 37(a). *Id.*; *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (recognizing that "an order [compelling] is not always a prerequisite to the imposition of sanctions" when a party has received adequate notice that certain discovery is to occur by a specific date and fails to comply (citing *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984)). *See also Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2nd Cir. 1991) (noting that the terms of Rule 37(b)(2) do not limit the issuance of sanctions for failures to obey only orders compelling pursuant to Rule 37(a)); *Props. Int'l Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir. 1983) (stating that there is no requirement under Rule 37(b)(2) that a party move for an order compelling; rather, only that an order for discovery was issued and disobeyed).

The sanctions listed under Rule 37(b)(2) include:  (1) a presumption of facts as established for the purposes of the action, as the prevailing party claims; (2) a preclusion of claims, defenses, or evidence against the disobeying party; (3) a striking of pleadings in whole or in part; (4) a stay of the proceedings until the order is obeyed; (5) a dismissal of the action in whole or in part; (6) an issuance of a default judgment against the disobeying party; and (7) a finding of contempt of court.  FED. R. CIV. P. 37(b)(2)(A)(i)-(vii).  Furthermore, the Court may require that the disobeying party, or the party's attorney, or both "pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* AT 37(b)(2)(C).

With respect to the degree of severity, striking pleadings, dismissing an action, and issuing a default judgment are the harshest sanctions. *Day v. Allstate Ins. Co.*, 788 F.2d 1110,

1113 (5th Cir. 1986) ("dismissal is an extreme sanction"); *Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976) (noting that dismissal and the striking of pleadings are extreme sanctions of last resort); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985) (listing several exemplary "extenuating factors" to justify the sanction of dismissal with prejudice, after characterizing it as a "draconian" remedy); *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998) (default judgment is an "extreme sanction"). *See also Welch v. Alexis*, No. 03 CV 2528 (CBA), 2004 U.S. Dist. LEXIS 17855, at *7 (E.D.N.Y. Jun. 1, 2004).  On the other hand, awarding attorney's fees and expenses, and presuming facts are the least harsh of available sanctions.  *Chilcutt v. United States*, 4 F.3d 1313, 1320 n.17 (5th Cir. 1993) ("deeming the establishment of certain facts is one of the least harsh sanctions available . . . under Rule 37(b)" and "is only more severe than the granting of expenses and attorneys' fees").  However, in some instances, "deem[ing] certain facts established may equate to a default judgment."  *Id.* at 1320 (citing *Marshall v. Segona*, 621 F.2d 763, 766 n.3 (5th Cir. 1980) (noting that facts taken as established or the exclusion of evidence could be tantamount to dismissal)).

Though the Court has broad discretion to issue sanctions, that discretion is not unlimited. *Chilcutt*, 4 F.3d at 1320; *Marshall*, 621 F.2d at 766.

> Rule 37(b)(2) contains two standards – one general and one specific – that limit [the Court's] discretion.  First, any sanction must be "just;" second, the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery.  While the latter requirements reflect the rule of *Hammond Packing*, the former represents the general due process restrictions on the court's discretion.

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 707 (1982) (referring to *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909), in which the Supreme Court held that due process was preserved despite the sanction of a default judgment because "the State simply utilized a permissible presumption that the refusal to produce material evidence . . . 'was but an

admission of the want of merit in the asserted defense,'" *Societe Internationale v. Rogers*, 357 U.S. 197, 209 (1958) (quoting *Hammond Packing*, 212 U.S. at 350-51), as opposed to the default judgment that was issued as "mere punishment" in *Hovey v. Elliott*, 167 U.S. 409 (1897) (holding that due process was violated when the defendant was denied his right to defend as punishment for failure to obey an order to pay into the registry of the court a certain sum of money)).

Furthermore, the Court must be mindful of the purposes behind Rule 37 sanctions. Rule 37 sanctions "serve the dual function[s] of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Allstate Ins. Co.*, 788 F.2d at 1114. "'[W]ithout adequate sanctions, the procedure for discovery would be ineffectual.'" *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970) (quoting C. WRIGHT, FEDERAL COURTS § 90 (1963)). Therefore, while "courts should impose sanctions no more drastic than those actually required to protect the rights of other parties, . . . overleniency is to be avoided where it results in inadequate protection of discovery." *Id.* (citing WRIGHT, *supra*, at 346; n.14). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). *See also Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (listing three purposes behind Rule 37, including preventing a disobeying party from benefiting from noncompliance, specifically and generally deterring noncompliance by parties, and obtaining compliance with the particular discovery order issued (citing *Nat'l Hockey League*, 427 U.S. 639, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976))). In short, Rule 37 sanctions provide "mechanisms by which Rules 26 to 36 can be made effective." 8B CHARLES ALAN

WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2281 (3d ed. 2010).

### a.   Sanctions are Justified

Request nos. 10, 11, and 12 all relate to the Ramirezes' transfers of personal properties that Plaintiffs allege were fraudulent.  The requests are directly relevant to procuring evidence to support Plaintiffs' TUFTA claim that:  (1) the transfers were either made with actual intent to hinder, delay, or defraud the Rodriguezes; or (2) the transfers were made without reasonable equivalent value at a time when the Ramirezes were insolvent.

Mrs. Ramirez's failure to fully comply with the December 15, 2008 order, specifically the above-mentioned discovery requests, is sufficient to warrant sanctions under Rule 37(b)(2).  FED. R. CIV. P. 37(b)(2)(A).  *See Traverse*, No. 91-16905, 91-16906, 1994 U.S. App. LEXIS 8881, at *4-5 (upholding a bankruptcy court's Rule 37(b)(2) sanctions against a party for failing to comply with a state court discovery order that was issued prior to the removal of the case based on 28 U.S.C. § 1450).  Her admitted failure to maintain documents is not excusable.  Rather, it is a form of evidence spoliation.  Cecilia Hallinan, *Balancing the Scales After Evidence is Spoiled:  Does Pennsylvania's Approach Sufficiently Protect the Injured Party?*, 44 VILL. L. REV. 947, 947 (1999) ("Spoilation of evidence is the tampering with, interference with, loss of or destruction of evidence or potential evidence that is to be used in contemplated or pending litigation.").

Furthermore, in light of the December 15, 2008 order finding that at that time, Mrs. Ramirez "had the ability to produce" the documents, the Court concludes that Mrs. Ramirez's subsequent failure to maintain documents was committed in bad faith.

Mrs. Ramirez claimed that she is not mentally competent to fully comply with the December 15, 2008. The Court rejected this claim. As the Court discussed above, Mrs. Ramirez is a mentally competent and lucid woman, despite her elderly age of 87. In fact, she engaged in evasive answers during the February 22, 2010 hearing. In sum, Mrs. Ramirez's failure to fully comply with the December 15, 2008 order was a result of a bad faith failure to maintain documents.

### b. Evidentiary Presumptions

Rule 37(b)(2)(A)(i) permits the Court to impose sanctions by "directing that the matters embraced in the [discovery] order or other designated facts be taken as established for purposes of the action, as the prevailing party claims . . . ." FED. R. CIV. P. 37(b)(2)(A)(i).

The Court finds that Mrs. Ramirez spoiled evidence by failing to maintain documents responsive to the discovery requests at issue. Though Mrs. Ramirez testified that she kept essentially no documents, the December 15, 2008 order specifically found that Mrs. Ramirez "had the ability to produce" the documents. Furthermore, the Court found Mrs. Ramirez competent and very lucid. Mrs. Ramirez was also aware of the pending lawsuits against her and her husband by the Rodriguezes. Based on the totality of these circumstances, the Court finds that Mrs. Ramirez's failure to maintain documents was not a result of "mere negligence." *Vick v. Tex. Empl. Comm.*, 514 F.2d 734, 737 (5th Cir. 1975). Rather, her behavior was tantamount to an open and unequivocal defiance of the December 15, 2008 order. As a result, the Court finds that she acted in bad faith. *Burns v. Imagine Films Entertainment*, 164 F.R.D. 594, 599 (W.D.N.Y. 1996) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990)).

The Court imposes the following sanctions against Mrs. Ramirez:  (1) a factual presumption that Mrs. Ramirez made the transfers of personal properties at issue; (2) because Mrs. Ramirez acted in bad faith, a factual presumption that the transfers were made either with the actual intent to hinder, delay, or defraud the Rodriguezes, or without reasonable equivalent value at a time when the Ramirezes were insolvent; and (3) a factual  presumption that the transfers consisted of not less than $80,000 worth of personal properties.  These presumptions are directed against Mrs. Ramirez only.  The burden of going forward with evidence to rebut the presumptions is imposed on no other party.  FED. R. EVID. 301.

These sanctions directly address the claims to which the discovery requests relate – the fraudulent transfers of personal properties – without offending due process requirements. *Compagnie Des Bauxites*, 456 U.S. at 707.  The sanctions are permissible presumptions that comport with *Hammond Packing*.  They are based on Mrs. Ramirez's refusal to produce evidence with respect to the transfers, which the Court treats as "an admission of the want of merit" in Mrs. Ramirez's potential defenses.  *Hammond Packing*, 212 U.S. at 350-51.

The Rodriguezes also request other factual presumptions that:  (1) the subject real property has a fair market value of $450,000; and (2) Mrs. Ramirez's conduct caused Plaintiffs emotional distress.  The discovery requests at issue relate to the alleged fraudulent transfers of personal properties; they do not relate to the alleged fraudulent transfer of the subject real property or to the Rodriguezes' emotional distress claim.  *Compagnie Des Bauxites*, 456 U.S. at 707 ('[T]he sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery.").  Therefore, the Court declines to impose these presumptions.

### c.   Monetary Sanctions

Rule 37(b)(2)(A)(vii) provides that the Court may "treat[sic] as contempt of court the failure to obey any [discovery] order except an order to submit to a physical or mental examination."   FED. R. CIV. P. 37(b)(2)(A)(vii).   The December 15, 2008 order compelled production of certain documents responsive to the discovery requests at issue.   Based on her failure to comply with the December 15, 2008 order, the Rodriguezes request that the Court impose a $5,000 monetary sanction against Mrs. Ramirez for civil contempt.

According to the Ramirezes' First Amended Petition, their only assets are:   (1) the subject real property, valued at $125,000, which the Ramirezes have contingently claimed as exempt; and (2) a total of $1,850 worth of personal properties, all of which the Ramirezes have claimed as exempt (case no. 09-70051, docket no. 35).   Therefore, Mrs. Ramirez is essentially a no-asset debtor.   For this reason, the Court declines to impose the requested $5,000 monetary sanction requested by the Rodriguezes against Mrs. Ramirez.   *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (stating that "the financial resources of the contemnor and the burden the sanctions may impose" is a factor to consider in whether to impose a monetary sanction for civil contempt (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947))).

However, as a coercive measure for Mrs. Ramirez to fully comply with the December 15, 2008 order, the Court will impose civil contempt sanctions of $250 per day.   The $250 daily sanction will begin accruing on May 19, 2010.   The daily sanction of $250 will continue until Mrs. Ramirez fully complies by producing documents responsive to request nos. 10, 11, and 12.

Consequently, Mrs. Ramirez will have the opportunity to avoid daily sanctions of $250 if she fully complies before May 19, 2010.   *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994) ("civil contempt sanctions, or those penalties designed to compel future compliance with a court

order, are considered coercive and avoidable through obedience"). She will, of course, also have the ability to cause the termination of the imposition of future sanctions. Future sanctions will be terminated upon her compliance with the required discovery.

**d. Legal Fees and Expenses**

Under Rule 37(b)(2)(C), the Court "must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

As discussed above, Mrs. Ramirez's failure to fully comply with the discovery requests at issue was caused by her failure to maintain documents, which was committed in bad faith and is inexcusable. Accordingly, there are no reasons to excuse ordering Mrs. Ramirez to pay the Rodriguezes' reasonable legal fees and expenses. On June 21, 2010 at 3:00 p.m., the Court will conduct an evidentiary hearing on the Rodriguezes' legal fees and expenses.

**Conclusion**

Mrs. Ramirez failed to comply with the December 15, 2008 order compelling production of documents responsive to request nos. 10, 11, and 12. Her failure to produce the documents was a result of a bad faith failure to maintain documents. Accordingly, the Court finds that sanctions are appropriate under Rule 37(b)(2).

The Court imposes the following sanctions against Mrs. Ramirez: (1) a factual presumption that she made the transfers of personal properties at issue; (2) a factual presumption that the transfers were made by Mrs. Ramirez either with the actual intent to hinder, delay, or defraud the Rodriguezes, or without reasonable equivalent value at a time when the Ramirezes were insolvent; (3) a factual presumption that the transfers consisted of not less than $80,000

worth of personal properties; (4) a daily sanction of $250 to begin accruing on May 19, 2010 until she fully complies with document production request nos. 10, 11, and 12; and (5) payment of the Rodriguezes' reasonable legal fees and expenses caused by Mrs. Ramirez's failure to produce the documents.  A separate order will be issued.

       SIGNED **May 11, 2010.**

 

                                      Marvin Isgur
                              UNITED STATES BANKRUPTCY JUDGE